**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF VIRGINIA**

**RICHMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:25CR99 |
| JAWAD BHATTI, | |
| *Defendant*. | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, hereby submits its position with respect to sentencing for defendant Jawad Bhatti.  The United States has reviewed the Presentence Investigation Report (PSR), Dk. No. 69, and does not dispute any of the facts or factors set out therein.  The defendant's applicable Sentencing Guideline range, based on his Total Offense Level of 11 and his Criminal History Category of I, is 8 to 14 months of imprisonment.  PSR ¶¶ 71-72.[1]

After careful consideration of each of the statutory factors enumerated in 18 U.S.C. § 3553(a), the United States recommends that the Court impose a sentence that consists of a four-year term of probation that includes the special and additional conditions of (1) Home Detention, (2) Debt Obligations, (3) Access to Financial Information, and (4) Occupational Restrictions; a fine of $10,000; forfeiture; restitution; and the mandatory special assessment.  Such a sentence would be sufficient, but not greater than necessary, to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a).

---

[1]    Falling within Zone B of the Sentencing Table, and thus authorizing the sentencing court to impose "a sentence of probation" if the sentence of probation "includes a condition" that substitutes "home detention for imprisonment" at the rate of "one day of home detention for one day of imprisonment." U.S.S.G. §§ 5B1.1(a)(2), 5C1.1.

## BACKGROUND

The defendant, a physician, owned and operated a pain management clinic—"Healing Hands of Virginia"—in Richmond from 2011 to 2026.  As a pain management physician, the defendant possessed a Drug Enforcement Administration (DEA) registration that permitted the defendant to prescribe controlled substances to his patients in the course of managing and treating their medical conditions and attendant symptoms.  Many of the defendant's patients utilized federal health care benefit programs—such as Medicaid and Medicare—to obtain medical treatment and counseling from the defendant's practice, and the defendant's practice accordingly billed those federal health care benefit programs to obtain reimbursement for the services rendered by the defendant and his employees.

In the course of treating some of his patients, the defendant employed a practice—injecting those patients with ozone gas—that the defendant knew and understood was not approved by the Food and Drug Administration (FDA).  The defendant likewise understood that (because this use of ozone gas for medical purposes was not approved by the FDA) he would not be reimbursed for these treatments by Medicaid or Medicare.  The defendant accordingly took deliberate actions to both conceal his use of ozone gas and to obtain financial reimbursement that he knew he was not legitimately entitled to:  the defendant omitted references to ozone gas treatments from his practice's medical records; and the defendant used false billing codes in his reimbursement requests to the federal health care benefit programs (characterizing his ozone treatments as other—permissible and thus reimbursable—types of medical interventions).

Over the course of an approximately 14-month period, spanning from August 2019 until early October of 2020, the defendant submitted claims for and was paid a total of more than $91,000 in billings related to his use of ozone injections at his Healing Hands of Virginia practice.

2

On June 17, 2025, the United States charged the defendant by way of an Indictment filed in the Eastern District of Virginia, Richmond Division. PSR ¶¶ 1-8. On February 3, 2026, the defendant appeared before Magistrate Judge Speight and pleaded guilty to Count Four of the Indictment (charging the defendant with Misbranded Drug, in violation of 21 U.S.C. §§ 331(k) and 333(a)(2)) pursuant to a written plea agreement with the United States. PSR ¶ 10. The District Court entered a Consent Order of Forfeiture (Dk. No. 56) but reserved ruling on the Magistrate Judge's Report and Recommendation (Dk. No. 55) for the time being, directing the parties to file Positions outlining their respective rationales for the plea agreement. *See* Dk. No. 57. The parties did so. Dk. Nos. 61, 64, 66.

Sentencing is set for May 15, 2026.

## POSITION ON SENTENCING

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the Guidelines "does not mean that they are irrelevant to the imposition of a sentence." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

A sentencing court should first calculate the range prescribed by the sentencing guidelines after making the appropriate findings of fact. *See United States v. Hughes*, 401 F.3d 540, 546 (4th

3

Cir. 2005). Following that calculation, a sentencing court must then "consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Id.*

### A. The Advisory Guidelines Range

As noted above, the United States has no objection or corrections to the PSR. By separate filing, the United States will move the Court to award a one-level decrease in the defendant's offense level pursuant to U.S.S.G. § 3E1.1(b). With this reduction, the defendant's Total Offense Level is 11 and his Criminal History Category is a I, placing the defendant within (as noted *supra*) Zone B of the Sentencing Table. The defendant faces a Guidelines range of 8 to 14 months. PSR ¶¶ 71-72.

### B. 18 U.S.C. § 3553(a) Factors

After the Court has properly calculated the Guidelines range and ruled upon all departure motions, the Court must then consider the factors identified in 18 U.S.C. § 3553(a) to fashion a reasonable sentence. *Gall v. United States*, 552 U.S. 38 (2007). Here, the 3553(a) factors support the United States' recommended sentence: a four-year term of probation, a fine of $10,000, forfeiture in the amount of $91,180, and restitution. The United States further recommends that the four-year term of probation include the following Special and Additional Conditions: (1) Debt Obligations, (2) Access to Financial Information, (3) Home Detention (for a term of 24 months), and (4) Occupational Restrictions.[2] The United States discusses the § 3353(a) factors—and the specific components of the United States' recommended sentence—below.

---

[2]    *See* U.S.S.G. § 5B1.3.

### 1. Nature and Circumstances of the Offense

The nature and circumstances of defendant's misconduct make clear the need for extended Court supervision and scrutiny of the defendant's occupational activities.

The defendant was an experienced pain management physician when he decided to disregard the clear and unequivocal stance of the FDA—that ozone gas was not approved for medical applications, such as injections—in favor of his personal belief that this type of medical intervention was nonetheless in his patients' best interests.[3]  While the defendant may have viewed his motives for employing this unapproved medical practice (and flouting FDA regulation) as laudable, the simple truth of the matter is that the defendant's actions constituted a rejection of his obligation as a medical professional to employ only FDA-approved treatments and medication regimens.  The defendant prioritized his convictions—his hubris—over what *should* have been his fundamental focus and priority: the well-being of his patients, some of whom reported suffering immediate and subsequent side effects from those ozone injections, and many of whom did not fully understand the precise nature of the injections the defendant was administering.

The defendant compounded his professional misconduct with fraudulent conduct.  The defendant knew that—precisely *because* the FDA had not approved his use of ozone gas for medical applications—the federal health care benefit programs that he routinely billed for reimbursement would refuse to reimburse him for his use of ozone gas injections at Healing Hands of Virginia.  The defendant accordingly used false billing codes to bill these ozone injections to those government health care program, and omitted references to ozone gas in his practice's medical records to prevent government regulators or investigators from learning about his

---

[3]    The United States concedes that—as indicated by the screenshots from defendant's website referenced in the Statement of Facts—the defendant believed and advertised that ozone could treat all manner of disparate ailments, and even administered ozone therapies to friends and family members.

5

unauthorized practice and the fraudulent nature of his related billings. [4]

The defendant's misconduct coupled hubris and greed—in short, it was serious and deserving of the felony conviction and attendant consequences outlined in the Plea Agreement and conceded to by the defendant,[5] and warrants the imposition of the United States' recommendation of the "Additional Condition" of a 24-month term of Home Detention,[6] to be served during the first two years of the defendant's four-year term of probation.

For the same reasons, the United States respectfully submits that the nature of the defendant's misconduct—prioritizing his personal views over medical best practices; submitting false billings that concealed his unauthorized interventions—warrants a sentence that provides for the Court's continued close scrutiny of the defendant's occupational activities. Accordingly, the United States recommends that the Court impose the following Occupational Restrictions as "Additional Conditions"[7] of the defendant's probation, to remain in place for the duration of the recommended four-year term:

- Defendant may not work in any position associated with the Pain Management field of medicine, whether directly or as a consultant.

- Defendant may not work in any position in which he could either (1) prescribe any controlled substance or (2) opine or consult on the prescription of any controlled

---

[4]     The Probation Officer appropriately assessed the defendant with a 2-point enhancement, pursuant to U.S.S.G. § 3B1.3, for his abuse of the trust placed in him by Medicaid.  See PSR ¶¶ 28, 37.

[5]     The defendant's Count Four fraud conviction in connection with a health care offense qualifies the defendant for mandatory exclusion from billing government healthcare programs. 42 U.S.C. § 1320a-7(a)(3); the defendant also agreed in his Plea Agreement (¶ 15) to permanently surrender his Drug Enforcement Administration (DEA) controlled substance registration for cause, and further agreed not to re-apply for a DBA registration number at any time in the future, either on his own behalf or on behalf of a corporate entity (to effectuate this, the defendant agreed to sign a Form DEA-104, Surrender for Cause of DEA Certificate of Registration, within 15 days of his guilty plea).

[6]     U.S.S.G. § 5B1.3(e)(2).

[7]     U.S.S.G. § 5B1.3(e)(4).

substance by any other individual.

- Defendant may not work in any position in which the defendant or his employer/associate(s) submits claims for reimbursement or payment for services rendered by the defendant to any federal insurance or benefits program.

Finally, the financial consequences of the defendant's misconduct—the submission to (and receipt from) Medicaid of more than $91,000 worth of fraudulent billings—constitute a compelling basis for the imposition of two additional "Special Conditions": that the defendant submit to the "Debt Obligation" condition enumerated at § 5B1.3(d)(2); and that the defendant submit to the "Access to Financial Information" condition enumerated at § 5B1.3(d)(3).

The United States respectfully submits that the nature and circumstances of the defendant's criminal conduct merit the imposition of each of the components of the United States' recommended sentence.

## 2.  History and Characteristics of the Defendant

The defendant was born in 1970 in Karachi, Pakistan; he was raised and lived primarily in Pakistan and Saudi Arabia before moving to Canada in 1996 (at the age of 26).  PSR ¶¶ 52-54. The defendant first entered the United States in 2007, and he became a naturalized citizen in 2013. PSR ¶ 55.  The defendant has been married to his wife since 2000; the couple has four children, ranging in age from 11 years to 23 years.  PSR ¶ 56.

The defendant reports that he was diagnosed with heart disease and received two stents in 2024; that he was diagnosed with diabetes in November 2025; and that he has diabetic neuropathy as well as diabetic retinopathy.  PSR ¶ 61.  The defendant also reports that he suffers from obesity and glaucoma, and that he is legally blind in his left eye.  *Id*.  The defendant is prescribed medication for his diabetes.  *Id*.  Separately, the defendant's wife informed the Probation Officer

that she believes the defendant's health conditions are severe and that his diabetes exposes him to a heightened risk of infections.  PSR ¶ 62.  The defendant does not appear to have a history (or current problem) with either alcohol or substance abuse.  PSR ¶ 65.

The defendant completed medical school in Pakistan in 1995, obtaining degrees in Medicine and Surgery.  PSR ¶ 66.  He studied and worked as a physician in Canada and Louisiana before arriving in the Richmond area, where he opened Healing Hands of Virginia in 2011.  PSR ¶ 67.  The PSR notes that the defendant has surrendered his DEA Certificate of Registration (pursuant to his agreement to that effect in the Plea Agreement, Dk. No. 52 at ¶ 15); the United States Attorney's Office has filed a Position noting its understanding that the defendant's practice is now closed.  PSR ¶ 67; Dk. No. 68.

The defendant has no criminal convictions, and a Criminal History score of zero (and is accordingly within Criminal History Category I).  PSR ¶¶ 44-47.

The United States respectfully submits that the defendant's history and characteristics—in particular, his significant physical and mental health conditions—support the imposition of the United States' recommended sentence in this case, which will severely restrict the defendant's freedom and occupational activities while preserving the Bureau of Prisons' medical resources and funding for the care of other defendants more deserving of carceral sentences.

### 3. Need to Afford Adequate Deterrence, Reflect the Seriousness of the Offense, and Provide Just Punishment

Protecting the public and deterring additional criminal conduct is another factor that courts are directed to consider under Section 3553(a)(2)(B)-(C).

The United States has previously outlined the significant deterrent value—both specific and general—that a felony conviction, and its attendant and associated consequences, provides for both Dr. Bhatti and other Medicaid-billing medical professionals.  *See* Dk. No. 60.

Summarized briefly, however, as regards (first) specific deterrence: the defendant's status as a convicted felon,[8] coupled with the explicit admissions and concessions made by the defendant in his Plea Agreement and Statement of Facts, effectively ends defendant's medical career, and eliminates his access to the only atmosphere in which he has committed fraud and used non-approved therapies. The defendant has lost the ability to prescribe controlled substances (and conceded that he cannot ever re-apply for this privilege). If the defendant's conviction becomes final, further, the defendant is subject to mandatory exclusion from the ability to bill government health care programs—the financial lifeblood of the defendant's practice.[9]

These restrictions, in short, have shuttered the defendant's practice;[10] he is no longer able to serve in any leadership or ownership role at an entity that bills government health care programs, and he also cannot provide administrative or management support, including basic functions like IT support, billing, or human resources functions.

Additionally, while the United States does not have any authority or jurisdiction over defendant's medical license, the Virginia Board of Medicine has summarily suspended defendant's license to practice medicine—a suspension that defendant, on the understanding that he would be

---

[8]     The United States notes that much of this discussion of the consequences of the defendant's conviction necessarily presupposes the Court's acceptance of the parties' Plea Agreement. *See* Dk. No. 60 at 6-7 (describing the interplay between the defendant's plea and accompanying admissions / concessions and the administrative and regulatory actions discussed here and in that previously-filed Position).

[9]     Should the Court accept the defendant's guilty plea, the defendant would be bound by his agreement in that document that that he committed fraud in connection with the delivery of health care pursuant to 42 U.S.C. § 1320a-7(a)(3). Subsection (a) of this statute is titled "Mandatory Exclusion," establishing that once the defendant's conviction is final, he will be unable to bill government health care programs in any capacity for a period of at least 5 years. The Office of Inspector General for Health and Human Services administers this statutory program, and their website and accompanying Guide make clear that there is very little that defendant would be allowed to do in any kind of medical practice. Given the ubiquity of government health care programs—about 36% of the country's population is covered by these programs—there is very little defendant can do in the United States health care system.

[10]     *See* Dk. No. 68 (noting the closure of the defendant's practice).

entering a guilty plea before this Court that would require his admissions to precisely the type of conduct giving rise to the Board of Medicine's decision to suspend his license, chose not to contest. That interim suspension—assuming the Court's acceptance of defendant's proposed guilty plea—will almost certainly become permanent. Administering FDA-unapproved treatments and failing to obtain informed consent for medical treatments, as defendant has admitted to doing in the Statement of Facts, are breaches of the medical standards of care and accordingly, grounds for the Board's decision to terminate the defendant's medical license.

The defendant's conviction and the United States' recommended sentence also serve the purposes of (second) general deterrence. The aforementioned sanctions attendant to (or flowing naturally from) the defendant's felony conviction will serve to deter other pain management physicians from administering treatments to their patients that have not been approved by the FDA (and to submit billing designed to conceal such unauthorized medical practices), because there are few—if any—sanctions more alarming and devastating for a medical professional than the prospect of losing the ability to practice in their field (in this case, both individually or within a larger practice).

Further, the United States' recommendation that the Court also impose the specified Additional Conditions—which prohibit the defendant from returning to his lifelong profession for a period of four years, on pain of revocation and imprisonment—also serve to constitute additional deterrence, for both this defendant and other medical professionals tempted to prioritize hubris and greed over their patients' best interest and their obligations to act as responsible medical providers and fiduciaries of the Medicaid and Medicare systems.

10

## **CONCLUSION**

For the reasons discussed above, the United States respectfully recommends that the Court sentence the defendant to a four-year term of probation that includes the special and additional conditions of (1) Home Detention, (2) Debt Obligations, (3) Access to Financial Information, and (4) Occupational Restrictions; a fine of $10,000; forfeiture; restitution; and the mandatory special assessment.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

By:      _____/s/_____

Thomas A. Garnett
Assistant United States Attorney
Virginia Bar No. 86054
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Phone:  (804) 819-5400
Fax:  (804) 819-7417